135 Nev., Advance Opinion 27

IN THE SUPREME COURT OF THE STATE OF NEVADA

YESENNIA ESMERALDA AMAYA,
Appellant,
vs.
MILTON ORLANDO GUERRERO
RIVERA,
Respondent.

No. 75769

**FILED**

JUL 03 2019


ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order establishing child custody.
Eighth Judicial District Court, Clark County; Mathew Harter, Judge.

*Reversed and remanded.*

Law Offices of Martin Hart, LLC, and Alissa A. Cooley, Las Vegas,
for Appellant.

Milton Orlando Guerrero Rivera,
in Pro Se.

BEFORE HARDESTY, STIGLICH and SILVER, JJ.

*OPINION*

By the Court, STIGLICH, J.:

Although appellant Yesennia Esmeralda Amaya was granted sole physical custody over her daughter, the district court denied her motion to make the three predicate findings necessary to petition the federal government for Special Immigrant Juvenile (SIJ) status. *See* 8 U.S.C. § 1101(a)(27)(J) (2012); NRS 3.2203. We take this opportunity to clarify that a child custody order can satisfy the first predicate SIJ finding, which

19-28444

requires a person be "appointed" to have custody over a juvenile. We further hold that the second predicate SIJ finding can be made where reunification is not viable with one parent due to abuse, abandonment, neglect, or some similar basis under Nevada law. Because the district court reached the opposite conclusions and also failed to determine whether the third predicate was met, we reverse and remand for further adjudication consistent with this opinion.

## BACKGROUND

Amaya gave birth to A.A. in El Salvador in November 2004. A.A.'s father, respondent Milton Orlando Guerrero Rivera,[1] and Amaya were never married and were no longer in a relationship when A.A. was born. A.A. lived with her mother and maternal grandmother in El Salvador until her mother moved to the United States when A.A. was two years old. A.A. then lived with her father until he kicked her out when she was ten years old, and she resumed living with her maternal grandmother. Amaya kept in regular contact with her daughter through A.A.'s maternal grandmother and sent money and clothes for A.A. A.A. recalls poor treatment from her father—alleging both emotional and physical abuse.

When A.A. was 12 years old, she moved to the United States to avoid the harsh realities of her life in El Salvador. Since February 2017, A.A. has lived with her mother, stepfather, and two half siblings in Las Vegas. A.A. does not want to return to El Salvador. In December 2017, Amaya petitioned for sole physical custody of A.A. The district court entered a default against the nonresponsive Guerrero Rivera, granted joint

---

[1]Guerrero Rivera did not file any answering brief in or otherwise respond to this fast-track appeal.

legal custody to both parties and sole physical custody to Amaya, and ordered Guerrero Rivera to pay child support at $100 per month.

Following the district court's default against Guerrero Rivera but before a written order was entered, Amaya filed a motion for SIJ predicate findings. The district court declined to hold a hearing and denied Amaya's request. The district court concluded that it did not appoint Amaya to have custody over A.A. by granting Amaya's petition for custody and that Amaya did not prove that A.A. was unable to reunify with both parents, rather than with just her father.[2] Presumably because the district court concluded Amaya did not satisfy these first two predicate SIJ findings, it did not reach the third. Amaya then filed a motion for reconsideration, which the district court also denied without a hearing.

## DISCUSSION

Federal law provides a pathway for undocumented juveniles residing in the United States to acquire lawful permanent residency by obtaining SIJ status under 8 U.S.C. § 1101(a)(27)(J). *See* 8 C.F.R. § 204.11 (2018). Obtaining SIJ status is a two-step process implicating both state and federal law: first, the applicant must go to state court to obtain a juvenile court order issuing predicate findings,[3] and only after such findings are made can the applicant petition the United States Citizenship and

___

[2]We note both Amaya and the district court refer to Assembly Bill 142, the bill that enacted NRS 3.2203 and went into effect in October 2017, before Amaya filed the underlying action. *See* 2017 Nev. Stat., ch. 212, § 1, at 1147. We apply NRS 3.2203 here.

[3]"Juvenile court" is defined under federal law as "a court located in the United States having jurisdiction under State law to make judicial determinations about the custody and care of juveniles." 8 C.F.R. § 204.11(a). A juvenile is a person who is under 21 years old and unmarried at the time of petitioning for SIJ. 8 C.F.R. § 204.11(c).

Immigration Services (USCIS) for SIJ status. *See Recinos v. Escobar*, 46 N.E.3d 60, 64-65 (Mass. 2016). The state trial court does not determine whether a petitioner qualifies for SIJ status, but rather provides an evidentiary record for USCIS to review in considering an applicant's petition. *See Benitez v. Doe*, 193 A.3d 134, 138-39 (D.C. 2018).

The Nevada Legislature enacted NRS 3.2203 in May 2017 to comport with federal law and codify the juvenile courts' existing authority to issue predicate findings for purposes of 8 U.S.C. § 1101(a)(27)(J). *See* 2017 Nev. Stat., ch. 212, Legislative Counsel's Digest, at 1146-47; Hearing on A.B. 142 Before the Assembly Judiciary Comm., 79th Leg. (Nev., March 8, 2017) (statement of Assemblyman Edgar Flores). Under the SIJ statutes, for an undocumented juvenile to be eligible to petition the USCIS, the state court's predicate findings must establish that (1) the juvenile is dependent on a juvenile court, the juvenile has been placed under the custody of a state agency or department, or the juvenile has been placed under the custody of an individual appointed by the court (dependency or custody prong); (2) due to abandonment, abuse, neglect, or some comparable basis under state law, the juvenile's reunification with one or both parents is not viable (reunification prong); and (3) it is not in the juvenile's best interest to be returned to the country of the juvenile's origin (best interest prong). *See* 8 U.S.C. § 1101(a)(27)(J); NRS 3.2203(3). We review the interpretation of these statutes de novo. *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 198, 179 P.3d 556, 559 (2008).

*A child custody order satisfies the dependency or custody prong for SIJ predicate findings*

First, Amaya challenges the district court's conclusion that the district court did not place A.A. under her custody in granting Amaya's

petition for custody.[4] In assessing the dependency or custody prong, the district court determines whether "[t]he child has been declared dependent on the court or has been legally committed to, or placed under the custody of, a state agency or department or a person appointed by the court[.]" NRS 3.2203(3)(a). Under Nevada law, the district court's order granting Amaya's petition for physical custody over A.A. constitutes a court determination that placed A.A. under Amaya's custody. *See* NRS 125A.045(1) (providing that an order determining a child's physical custody is a "[c]hild custody determination"). We conclude that an order determining physical custody of a child satisfies the dependency or custody prong for SIJ predicate findings.[5]

---

[4]The dissent concludes that NRS 3.2203(2)'s lack of explicit enumeration of NRS Chapter 125C places these proceedings beyond the reach of NRS 3.2203. We disagree. District courts conducting proceedings pursuant to NRS Chapter 125C already have jurisdiction to make the types of findings that constitute SIJ findings, *see, e.g.*, NRS 125C.003 (awarding physical custody of a child); NRS 125C.003(3) (determining if a parent has abandoned a child); NRS 125C.0035(4)(j) (determining if a parent has abused or neglected a child); NRS 125C.0035(4) (setting forth considerations in evaluating a child's best interest). In resolving Amaya's petition for custody, the district court's jurisdiction encompassed making the SIJ findings that were material to A.A.'s custody and best interest. *See Landreth v. Malik*, 127 Nev. 175, 187, 251 P.3d 163, 171 (2011) (concluding that the family court had jurisdiction to resolve issues beyond its jurisdiction when necessary to resolve matters over which its jurisdiction was properly exercised). NRS 3.2203 does not divest the court of this authority. *See id.* at 180, 251 P.3d at 166-67 (holding the Legislature cannot limit the constitutional powers of a district court judge).

[5]Several other jurisdictions have adopted this approach. *See, e.g.*, *Simbaina v. Bunay*, 109 A.3d 191, 201 (Md. Ct. Spec. App. 2015) (noting that the state court order awarding sole custody made a determination about the juvenile's custody for purposes of making SIJ findings);

*Showing that reunification with one parent is not viable satisfies the reunification prong for SIJ predicate findings*

Next, Amaya argues the district court erred in concluding the reunification prong required Amaya to demonstrate A.A. could not reunify with both parents. Amaya contends the plain language that "[t]he reunification of the child with one or both of [the juvenile's] parents was determined not to be viable" encompasses two scenarios: (1) reunification is not viable with one parent, or (2) reunification is not viable with both parents.

The district court did not explicitly rule as to this prong but denied Amaya's request, in part, because she could not show that reunification with *both* parents was not viable. In reaching this conclusion, the district court misreads this court's unpublished order in *In re Guardianship of D.S.M.*, Docket No. 72820 (Order of Affirmance, March 15, 2018). In *D.S.M.*, this court affirmed the district court's denial of a motion for SIJ findings because the appellant, D.S.M.'s aunt, did not show that D.S.M. was unable to reunify with his father due to abandonment or neglect where reunification was not possible because of the father's murder. *Id.* There, the district court had also determined that reunification with the mother was viable, a finding that D.S.M. did not challenge. *Id.* Accordingly, the appellant had not shown that reunification was not viable within the meaning of NRS 3.2203 with even one parent, and thus *D.S.M.* is

_____

*De Guardado v. Guardado Menjivar*, 901 N.W.2d 243, 247-48 (Minn. Ct. App. 2017) (recognizing the determinations made in a dissolution proceeding satisfied the dependency or custody prong because the findings pertained to the minor child's physical and legal custody); *In re Marcelina M.-G. v. Israel S.*, 973 N.Y.S.2d 714, 721 (App. Div. 2013) (finding that the family court order placing a juvenile in her mother's custody satisfied the dependency or custody prong).

distinguishable from the underlying facts here and, moreover, does not suggest that the reunification prong requires showing that reunification is not viable with both parents.

We conclude the plain language of "one or both of [the juvenile's] parents" is clear—the use of a disjunctive "or" signals the reunification prong is met where the juvenile cannot reunify with one parent or with both parents. In approving of one-parent SIJ cases, we join the majority of states that have considered this issue. *See, e.g., Eddie E. v. Superior Court*, 183 Cal. Rptr. 3d 773, 779-80 (Ct. App. 2015) (noting the significance of the disjunctive "or" in "1 or both" language in 8 U.S.C. § 1101(a)(27)(J)); *E.P.L. v. J.L.-A.*, 190 A.3d 1002, 1007 (D.C. 2018) ("[T]he [SIJ] statute only requires proof of abandonment by one parent."); *In re Estate of Nina L.*, 41 N.E.3d 930, 938 (Ill. App. Ct. 2015) ("Use of the disjunctive indicates that abuse, neglect or abandonment by one parent is sufficient to support the predicate finding."); *Marcelina M.-G.*, 973 N.Y.S.2d at 721-24 (holding the reunification prong was met where reunification with a child's father was not viable due to abuse, though her mother retained custody). Additionally, this approach is in harmony with federal policy. *See, e.g.*, 6 U.S. Citizenship & Immigr. Servs., Dep't of Homeland Sec., Policy Manual pt. J, ch. 2(D)(1), https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-2 (last visited May 28, 2019) ("Placing the petitioner 'under the custody of' a person requires physical custody. A qualifying court-appointed custodial placement could be with one parent, if reunification with the other parent is found to be not viable due to that parent's abuse, neglect, or abandonment of the petitioner."). The district court thus erred when it declined to consider whether reunification with A.A.'s father was viable after concluding that reunification with A.A.'s mother was viable.

Accordingly, we reverse the district court's custody order insofar as the court denied Amaya's motion for SIJ predicate findings, and we remand this case to the district court for further proceedings consistent with this opinion.

                                        _____, J.
                                         Stiglich

I concur:

_____, J.
Hardesty

SILVER, J., dissenting:

To pursue Special Immigrant Juvenile (SIJ) status, a child must first petition a state juvenile court to issue an order making special findings of fact that the child is dependent upon the court or legally committed to a court-appointed individual. *In re Marisol N.H.*, 979 N.Y.S.2d 643, 645 (App. Div. 2014). A state court must thereafter make findings that reunification with one or both of the parents is not viable and that it is not in the child's best interest to return to his or her home country. *Id.* Once a state court has issued the predicate findings, the child may petition the federal government for SIJ status. *Id.* The fact that a child has one fit parent available to care for him or her does not, by itself, preclude the issuance of special findings under the SIJ statute. *Id.* at 645-48. "[I]t is entirely consistent with the legislative aim of the [SIJ] statute to consider the plight the child would face if returned to his or her native country"; therefore a child may be eligible for SIJ status where reunification with one parent is not viable and it is in the child's best interest to not return to his or her home country. *Id.* (concluding a family court erred by dismissing the children's petitions for the appointment of their mother as their guardian in order to pursue SIJ status, because a parent can be named as the guardian of his or her child, and the family court had refused to conduct a hearing on whether granting the mother's guardianship petition and potentially enabling the children to seek legal status in the U.S. was in the children's best interest).

In Nevada, NRS 3.2203 specifically details when a district court must make findings pursuant to the SIJ statutes: "during a proceeding held pursuant to chapter 62B, 125, 159, 159A or 432B of NRS." NRS 3.2203(2). If a statute is clear and unambiguous, we do not look beyond its plain

language, and we strive to give effect to the plain meaning of its words and phrases. *Davis v. Beling*, 128 Nev. 301, 311, 278 P.3d 501, 508-09 (2012). Here, the statute clearly applies only to proceedings held pursuant to NRS Chapters 62B (Juvenile Court Proceedings), 125 (Dissolution of Marriage), 159 (Guardianship of Adults), 159A (Guardianship of Minors), or 432B (Protection of Children From Abuse and Neglect). By enumerating specific chapters and subchapters, yet omitting NRS Chapter 125C (Custody and Visitation), the Legislature placed NRS Chapter 125C child custody proceedings outside the scope of NRS 3.2203. *See Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts* 107-11 (2012) (addressing the negative-implication canon); *cf.* NRS 3.223 (specifically providing that the family court has jurisdiction over proceedings brought under NRS Chapter 125C, in addition to 125, 159A, 432B, and other delineated statutes).

Not only is NRS 3.2203(2) clear in this regard, but subsection 3 of the statute, which requires the child to have been placed under the custody of a state agency, department, or person "appointed by the court," likewise does not create ambiguity. Importantly, the "appointed" language relates back to the statutes enumerated earlier in that same subsection. NRS 3.2203(3) ("A person may include in a petition filed or motion made *pursuant to chapter 62B, 125, 159, 159A or 432B of NRS* a request that the court make the . . . finding[ ] . . . [that] [t]he child had been . . . placed under the custody of . . . a person appointed by the court." (emphasis added)); *cf. State v. Plunkett*, 134 Nev. Adv., Op. 88, 429 P.3d 936, 938-39 (2018) (addressing aider and abettor liability under NRS 212.165(4) and considering other subsections of the same statute in interpreting the statute's plain language). Accordingly, NRS 3.2203(3) when read as a whole

is clear that for purposes of SIJ proceedings, the "person appointed by the court" must be appointed in a proceeding under one of those chapters enumerated earlier in the statute. Thus, the plain wording of NRS 3.2203 does not encompass an NRS Chapter 125C proceeding.

Instead of filing under one of the chapters enumerated in the statute, Amaya petitioned the district court under NRS Chapter 125C. Yet, NRS Chapter 125C is specifically excluded from NRS 3.2203, and the plain language of NRS 3.2203 does not mandate that the district court make findings for purposes of the SIJ statutes. Because Amaya petitioned the district court pursuant to NRS Chapter 125C, instead of petitioning the juvenile court for guardianship pursuant to NRS Chapter 159A, I agree with the district court here. The district court was not required to make specific findings because pursuant to NRS 3.2203, the child had not been "placed under the custody of . . . a person appointed by the court" in either temporary or permanent guardianship proceedings, which seems to be what Amaya really desired.

However, I believe nothing precludes Amaya from petitioning for guardianship pursuant to NRS Chapter 159A and thereafter seeking special findings, especially where such a request is unopposed as it was below. Amaya's desire for "specific findings" for SIJ status by the district court was thwarted, in my view, because she used the wrong vehicle to obtain them. Because this case involved a default in a child custody proceeding filed under NRS Chapter 125C, NRS 3.2203 is not implicated. Therefore, I cannot say that under these particular facts the district court abused its discretion and should be reversed for failing to make the specific

findings. Further, nothing would preclude Amaya from obtaining her desired result by petitioning again under a different statute encompassed by NRS 3.2203 even if we were to affirm the district court in this case. Accordingly, I respectfully dissent.

_____, J.
Silver