136 Nev., Advance Opinion 54

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| MARIELA EDITH LOPEZ,<br>Appellant,<br>vs.<br>MANUEL DE JESUS SERBELLON<br>PORTILLO,<br>Respondent. | No. 79549<br><br>**FILED**<br><br>AUG 06 2020<br><br>ELIZABETH A. BROWN<br>CLERK OF SUPREME COURT<br>BY_____<br>CHIEF DEPUTY CLERK |

Appeal from a district court order in a child custody matter. Eighth Judicial District Court, Family Court Division, Clark County; Rebecca Burton, Judge.

*Affirmed in part, reversed in part, and remanded.*

Hamilton Law and Ryan A. Hamilton, Las Vegas,
for Appellant.

Manuel de Jesus Serbellon Portillo, La Paz, El Salvador,
Pro Se.

---

BEFORE PARRAGUIRRE, HARDESTY and CADISH, JJ.

*OPINION*

By the Court, HARDESTY, J.:

Through a custody proceeding, appellant Mariela Edith Lopez asked the district court to make the predicate findings necessary to petition the federal government for Special Immigrant Juvenile (SIJ) status. The district court refused to find that the minor child's reunification with respondent Manuel de Jesus Serbellon Portillo was not viable. We take this

SUPREME COURT<br>OF<br>NEVADA

(O) 1947A

20-28928

opportunity to address what the court should consider in determining whether reunification is viable for purposes of SIJ findings. Because the district court properly awarded Lopez custody but did not properly construe the controlling statute in determining whether reunification was not viable, we affirm in part, reverse in part, and remand for further adjudication consistent with this opinion.[1]

## BACKGROUND

Lopez gave birth to K.M.L. in El Salvador in 2007. She had informed K.M.L.'s father, Serbellon Portillo, of her pregnancy. She also specifically informed Serbellon Portillo via phone of K.M.L.'s birth when K.M.L. was three months old. Serbellon Portillo has had no communication with K.M.L., has not sought any contact with K.M.L., and has provided no support for K.M.L. Serbellon Portillo resides in El Salvador and has Lopez's contact information or could contact her through her family there, but he has not done so.

K.M.L. resided in El Salvador with Lopez's mother until 2017. At that point, Lopez's mother was no longer able to care for him. Lopez also feared for K.M.L.'s safety because of increased gang activity in his Salvadoran neighborhood. In particular, K.M.L.'s neighbors were killed by gang members. K.M.L. thus relocated to the United States to live with Lopez.

Lopez filed the underlying custody action seeking primary physical and legal custody of K.M.L. and requesting the district court make the predicate findings necessary for K.M.L. to seek Special Immigrant Juvenile (SIJ) status from the federal government. Serbellon Portillo was

---

[1]Pursuant to NRAP 34(f)(1), we have determined that oral argument is not warranted in this appeal.

personally served with a copy of the custody complaint in both English and Spanish. He did not file a responsive pleading. The district court heard testimony from Lopez and awarded her primary physical and legal custody. In its order, the district court found that it was in K.M.L.'s best interest to remain with Lopez but stated it was "unable to find that reunification is not viable due to abandonment because this Court is unable to predict whether the father will seek to reunify with the child some time in the future." Lopez appeals.

## DISCUSSION

As we have previously recognized, the federal government "provides a pathway for undocumented juveniles residing in the United States to acquire lawful permanent residency by obtaining SIJ status under 8 U.S.C. § 1101(a)(27)(J)." *Amaya v. Guerrero Rivera*, 135 Nev. 208, 209, 444 P.3d 450, 451 (2019). Before an applicant may file a petition with the federal government for SIJ status, the applicant must obtain a state juvenile court order with three findings:

> (1) the juvenile is dependent on a juvenile court, [or] the juvenile has been placed under the custody of . . . an individual appointed by the court (dependency or custody prong); (2) due to abandonment, abuse, neglect, or some comparable basis under state law, the juvenile's reunification with one or both parents is not viable (reunification prong); and (3) it is not in the juvenile's best interest to be returned to the country of the juvenile's origin (best interest prong).

*Id.* at 210, 444 P.3d at 452. NRS 3.2203 provides district courts with jurisdiction to make the SIJ findings when requested in certain proceedings, such as custody proceedings. Here, the first SIJ finding was established by the order awarding Lopez custody of K.M.L. *Amaya*, 135 Nev. at 211, 444

P.3d at 452. We turn then to the second SIJ finding—the reunification prong.

Lopez argues that the district court erred in interpreting the reunification prong as requiring a finding that reunification was not possible, instead of not viable. Reviewing that decision de novo, we agree with Lopez. *See Amaya*, 135 Nev. at 210, 444 P.3d at 452 (providing that this court reviews interpretation of statutes de novo).

To satisfy the second SIJ predicate, the court must find that "reunification of the child with one or both of his or her parents [is not] viable because of abandonment, abuse or neglect or a similar basis under the laws of this State." NRS 3.2203(3)(b). In the termination-of-parental-rights context, abandonment of a child is established when the parent's conduct "evinces a settled purpose on the part of one or both parents to forego all parental custody and relinquish all claims to the child." NRS 128.012(1). Additionally, a presumption that the parent has abandoned the child applies in that same context when the parent has not supported the child or communicated with the child for six months. NRS 128.012(2). While the district court may look to this definition and presumption of abandonment for guidance in determining the reunification prong of the SIJ findings, the SIJ findings do not require as high a burden of abandonment because the reunification prong only requires that reunification is *not viable*, instead of *not possible*. 8 U.S.C. § 1101(a)(27)(J)(i) (Supp. I 2014);[2] NRS 3.2203(3)(b).

---

[2]We acknowledge that a definition included in 8 U.S.C. § 1101(a)(43)(F) has been held unconstitutionally vague by other courts. *See, e.g., Golicov v. Lynch*, 837 F.3d 1065 (10th Cir. 2016); *Shuti v. Lynch*, 828 F.3d 440 (6th Cir. 2016); *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir.

In addressing whether the trial court erred in refusing to make the predicate finding that reunification is not viable with a parent who allegedly abandoned a child, the District of Columbia Court of Appeals observed that a court should take "a realistic look at the facts on the ground in the country of origin and a consideration of the entire history of the relationship between the minor and the parent in the foreign country." *J.U. v. J.C.P.C.*, 176 A.3d 136, 140 (D.C. 2018). Further, the *J.U.* court observed that the definition of "viable" calls for a court to consider whether reunification is practicable or workable. *Id.* at 140 (citing *Merriam-Webster New International Dictionary* (3d ed. 2002) (defining viable as "capable of being put into practice: workable"), *American Heritage Dictionary of the English Language* (3d ed. 1992) (defining viable as "capable of success or continuing effectiveness; practicable"), and *Random House Dictionary of the English Language* (21st ed. 1987) (providing that viable means "practicable; workable")). Addressing the abandonment part of the inquiry, the *J.U.* court also reasoned that because the concept of abandonment for the purpose of SIJ findings is not one that leads to the termination of a parent's parental rights, a court need only "assess the impact of the history of the parent's past conduct on the viability, *i.e.*, the workability or practicability of a forced reunification of parent with minor, if the minor were to be returned to the home country." *Id.* at 141.

In *J.U.*, the father had visited the child regularly in El Salvador when the child was young. *Id.* at 142. When the child's mother relocated to the U.S., however, the child resided in El Salvador with his paternal

---

2016). Because this matter concerns a definition from another subsection of that statute, we conclude those opinions have no bearing on our decision in this matter.

grandfather, who the child thought of as his father. *Id.* The father never provided financial support for the child, never showed the child affection or cared for the child, and never assumed any parental responsibility for the child other than signing the documents for the child to obtain a passport to travel to the U.S. *Id.* at 142. After the paternal grandfather died, leaving the child with no place to live in El Salvador, the father did not invite the child to live with him, and the father did not communicate with the child after the child then relocated to the U.S. *Id.* at 142-43. The trial court found that the mother must have been minimizing the father's involvement in the child's life, and thus, reunification was viable. *Id.* at 142. The Court of Appeals, however, concluded that "the trial court applied too demanding a standard of both 'viability' and 'abandonment,'" as the father had only taken "spasmodic steps in his parental role" and "essentially outsourced all [his parental] duties to others." *Id.* at 142-43. Therefore, the Court of Appeals concluded that reunification was not viable as it was not practicable or workable to send a child "back to the care of a father who has never fulfilled any day-to-day role in the support, care, and supervision during the boy's lifetime." *Id.* at 143.

While not many jurisdictions have had the opportunity to provide guidance on determining when abandonment renders reunification not viable for the purpose of SIJ findings, two jurisdictions have adopted the approach set forth in *J.U. Romero v. Perez*, 205 A.3d 903 (Md. 2019); *Kitoko v. Salomao*, 215 A.3d 698 (Vt. 2019). In fact, the Court of Appeals of Maryland expanded on *J.U.* and provided a nonexhaustive list of factors a court should consider in determining whether abuse, neglect, or abandonment indicate that reunification is not viable:

> (1) the lifelong history of the child's relationship with the parent (i.e., is there credible evidence of

SUPREME COURT
OF
NEVADA

(O) 1947A

6

past mistreatment); (2) the effects that forced reunification might have on the child (i.e., would it impact the child's health, education, or welfare); and (3) the realistic facts on the ground in the child's home country (i.e., would the child be exposed to danger or harm).

*Romero*, 205 A.3d at 915.

These cases provide an instructive legal framework for evaluating the SIJ reunification prong, and we therefore adopt the approach discussed in *J.U.*, 176 A.3d at 140-43, and *Romero*, 205 A.3d at 915. While the district court may look to definitions of abandonment that apply in other contexts, we caution district courts to remember that because SIJ findings do not result in the termination of parental rights, the consideration of whether a parent has abandoned a child such that reunification is not viable is broader than the consideration of whether a parent's abandonment of a child warrants termination of the parent's parental rights.

Because the district court here looked at whether reunification might be possible in the future instead of looking at the viability of reunifying K.M.L. with Serbellon Portillo after considering the history of the parent-child relationship, whether it would be practicable or workable to send K.M.L. back to Serbellon Portillo's care, and the facts on the ground in El Salvador, we conclude the district court erred in declining to make the predicate finding that reunification is not viable under NRS 3.2203(3)(b). *Amaya*, 135 Nev. at 210, 444 P.3d at 452. Because no party challenges the custody decision and the record on appeal does not indicate the district court abused its discretion by awarding Lopez primary physical and legal custody of K.M.L., we affirm the custody decision.

## CONCLUSION

For the purpose of SIJ findings, a district court addressing whether reunification is not viable should consider the history of the parent-child relationship, the conditions on the ground in the child's foreign country, and whether returning the child to the parent in the foreign country would be workable or practicable due to abandonment, abuse, or neglect. Because the district court did not apply the proper legal framework in concluding that it could not find that reunification was not viable, we reverse the district court's order insofar as it denied Lopez's motion for SIJ predicate findings, but we affirm the custody aspect of the order. We remand this case to the district court for further proceedings consistent with this opinion.

_____, J.
Hardesty

We concur:

_____, J.
Parraguirre

_____, J.
Cadish

SUPREME COURT
OF
NEVADA

(O) 1947A