**[J-45-2024] [MO: Dougherty, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| LICELY JUAREZ VELASQUEZ, | : | No. 108 MAP 2023 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Superior Court at No. 2688 EDA |
| | : | 2022, entered on June 20, 2023, |
| v. | : | Affirming the Order of the Delaware |
| | : | County Court of Common Pleas, |
| | : | Civil Division, at No. CV-2021- |
| LIZARDO MARROQUIN MIRANDA, | : | 002235 dated September 15, 2022 |
| | : | and entered on September 20, 2022 |
| Appellee | : | |
| | : | SUBMITTED: March 25, 2024 |

**DISSENTING OPINION**

**JUSTICE BROBSON**                    **DECIDED: August 29, 2024**

Like Justice Wecht, I somewhat grudgingly must conclude that a common pleas court making a judicial determination in a child custody proceeding falls within the broad federal definition of "juvenile court" under 8 U.S.C. § 1101(a)(27)(J) and 8 C.F.R. § 204.11(a). Accordingly, a Pennsylvania court sitting in this capacity has the authority to make the predicate state judicial determinations that would allow an immigrant to seek special immigrant juvenile status[1] and lawful residency in the United States of America through the United States Citizen and Immigrations Services (USCIS).[2] As both the

---

[1] I use SIJ when referring to a special immigrant juvenile and SIJS when referring to special immigrant juvenile status.

[2] The United States Court of Appeals for the Third Circuit has explained the benefits of SIJS as follows:

> The protections afforded to children with SIJ status include an array of statutory and regulatory rights and safeguards, such as eligibility for application of adjustment of status to that of lawful permanent residents . . . ,

(continued…)

Majority and Justice Wecht aptly acknowledge, each state likely has its own view of what constitutes a "juvenile court" based on its own understanding of the term. (Maj. Op. at 26 n.17; *see* Wecht, J., Concurring Op. at 3-6.) It seems to me that our federal government purposefully adopted a broad definition of the term, so as to account for these variations from state to state.

Given this legal conclusion, the Delaware County Court of Common Pleas (Custody Court), hearing and deciding the custody complaint of Appellant Licely Juarez Velasquez (Mother), meets the definition of a "juvenile court" for the above limited purposes under federal law. This is, in my view, a jurisdictional question that does not depend on the nature of the custody order itself. It follows, then, that the custody determination here, awarding sole legal and physical custody to the custodial parent, Mother, does not implicate the Custody Court's jurisdiction to make requested SIJS findings. For this reason, I concur with the Majority's decision to reverse the contrary conclusion by the Pennsylvania Superior Court in this matter.

I cannot, however, agree with the Majority's mandate to remand this matter to the Custody Court with direction to the Custody Court to make the predicate SIJ determinations that Mother requests. Before explaining why, I first express my doubts about whether a court sitting in a custody proceeding can ever make the predicate SIJ reunification finding where the court in custody proceedings grants custody to one parent.

Here, Mother removed Children from Guatemala, traveled to the United States with them, and resides with them in Delaware County, Pennsylvania. Father remains in Guatemala. Mother, who sought and obtained sole physical and legal custody of

---

exemption from various grounds of inadmissibility, and robust procedural protections to ensure their status is not revoked without good cause.

*Osorio-Martinez v. Attorney General*, 893 F.3d 153, 158 (3d Cir. 2018).

Children, also asked the Custody Court to make a reunification determination solely with respect to Father. In applying the rules of construction that govern our interpretation and application of federal law,[3] I can discern no legislative intent by Congress to confer lawful residency to immigrants who, following custody proceedings, remain in the custody of at least one parent. The fact that the statute and regulation speak to "reunification" strongly suggests that the state juvenile court proceeding must involve an immigrant child who is, at the time or as a result of the state court proceedings, separated from *both* parents and cannot be reunified with one or both "due to abuse, neglect, abandonment, or a similar basis found under State law." 8 U.S.C. § 1101(a)(27)(J)(i). An immigrant child that cannot be reunified with at least one parent requires the protection of the state juvenile courts and, under federal law, is entitled to seek SIJS. The opposite is also true under the statute. If an immigrant child can be reunified with one or both parents, then the child does not qualify for SIJS.

Paradigmatic of this reading of the federal law is the decision of the United States Court of Appeals for the Fourth Circuit in *Perez v. Cuccinelli*, 949 F.3d 865 (4th Cir. 2020) (en banc). In that case, a native Guatemalan, Felipe, who fled his country when he was 16 applied to the USCIS for SIJS. Felipe relied on a state court order that granted Felipe's older brother, Mateo, custody over Felipe. The custody order specifically provided that reunification with both parents was not viable due to abuse, neglect, abandonment, or similar basis under State law. *Perez*, 949 F.3d at 868-70. USCIS rejected Felipe's application, however, because the state court order was only a temporary order, not a final custody order. In the absence of a permanent order that reunification was not viable, USCIS determined that Felipe was not eligible for SIJS. For

---

[3] *See*, *e.g.*, *Council 13, Am. Fed'n of State, Cnty. & Mun. Emps. v. Rendell*, 986 A.2d 63, 80 (Pa. 2009).

reasons not relevant to this matter, the Fourth Circuit rejected the USCIS's reading of the governing federal law that a permanent custody order was required. *Id.* at 881.

I have found no federal court decision that confirms or rejects whether SIJS may be granted to an immigrant child based on a state custody order that places, or reunifies, the child with *one* parent.[4] I recognize that some state courts from other jurisdictions have answered that question in the affirmative. *See, e.g.*, *Amaya v. Guerrero Rivera*, 444 P.3d 450 (Nev. 2019). I also acknowledge, as the Majority Opinion does (Maj. Op. at 27), that the USCIS Policy Manual provides for such a situation: "A qualifying court-appointed custodial placement could be with one parent, if reunification with the other parent is found to be not viable due to that parent's abuse, neglect, abandonment, or similar maltreatment of the petitioner." 6 USCIS PM J.2(C)(1). Nonetheless, those state court interpretations and the USCIS Policy Manual are at least arguably in tension with the language of the federal statute and regulation. Moreover, the USCIS Policy Manual does not have the force and effect of law. *See Viswanadha v. Mayorkas*, 660 F. Supp. 3d 759, 774 (N.D. Ind. 2023). It is akin to what we refer to in Pennsylvania as a statement of policy.[5] In this regard, the manual expressly provides:

---

[4] The Majority contends that the Pennsylvania Superior Court, in *Orozco v. Tecu*, 284 A.3d 474 (Pa. Super. 2022), "did not foreclose a one-parent custody order as a pathway to possible SIJ classification." (Maj. Op. at 28.) I have read *Orozco* and find no such pronouncement by the intermediate appellate court. The court made only two rulings: (1) that the common pleas court's order refusing to issue SIJS findings was immediately appealable as a collateral order; and (2) the common pleas court abused its discretion in refusing to issue the requested SIJS findings without explanation. *Orozco*, 284 A.3d at 478-79. The question of whether the federal law affords SIJS where custody is granted to one parent—*i.e.*, where reunification *is* viable with one parent—was not addressed by the intermediate appellate court in *Orozco*.

[5] Section 102(13) of the Commonwealth Documents Law, Act of July 31, 1968, P.L. 769, *as amended,* 45 P.S. § 1102(13), defines a statement of policy as follows:

> [A]ny document, except an adjudication or a regulation, promulgated by an
> agency which sets forth substantive or procedural personal or property

(continued…)

The Policy Manual contains the official policies of USCIS and assists immigration officers in rendering decisions. The Policy Manual is to be followed by all USCIS officers in the performance of their duties but it does not remove their discretion in making adjudicatory decisions. *The Policy Manual does not create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person.*

USCIS PM "About the Policy Manual" (emphasis added). The accuracy of the manual's interpretation and application of what is referred to as the federal SIJS statute, 8 U.S.C. § 1101(a)(27)(J), is, therefore, not unassailable.[6]

The existence of the manual language, however, likely explains the dearth of federal case law on the subject. If USCIS reads the federal law as allowing for SIJS in one-parent custody situations and consequently grants SIJS to immigrants based on a one-parent custody order, who would challenge that determination? Who would test USCIS's interpretation of the federal law?

Although it is up to USCIS to decide whether an applicant qualifies for SIJS, it is up to the state courts to make the predicate judicial determinations that the federal statute directs. This all leads to the question of what is the predicate judicial determination that a state court must issue under the federal statute with respect to reunification? Is it, as Mother claims, simply that reunification with Father is not viable? Or, under the above reading of the statute, must the state court determine that it is not viable to reunify the child with one or both parents? Here, it was unquestionably viable for the Custody Court

<hr>

rights, privileges, immunities, duties, liabilities or obligations of the public or any part thereof, and includes, without limiting the generality of the foregoing, any document interpreting or implementing any act of Assembly enforced or administered by such agency.

[6] Even if the statutory language here could be characterized as ambiguous, federal courts are no longer compelled to defer to an agency's interpretation; instead, they "must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024).

to "reunify" (although never separated) Children with Mother (one), but not Mother and Father (both). Does the duty of the state court under federal law to issue a determination with respect to reunification apply where the state court grants custody to one of the parents? To me, these are important questions that arise in this case.

Nevertheless, although the Majority does not tackle these questions directly, it does so tacitly by concluding that the Custody Court had the jurisdiction to find, as Mother requested, "that . . . reunification with Father is not viable due to abuse, abandonment, neglect, or a similar basis under Pennsylvania law." (Maj. Op. at 31.) For reasons explained above, I have serious doubts as to whether this particular question *is* the question that state courts must answer under the federal SIJS scheme. That being said, we, like the trial court and the Pennsylvania Superior Court, are presented with an entirely one-sided view of the record and law that favors Mother's preferred construction of the federal law.[7] This is by no means an ideal way to evaluate and decide weighty legal issues.[8] It seems prudent, then, that we should tread carefully in our decision making so as to avoid far-reaching results that, later, in an adversarial posture, might be shown to be unworkable or, worse, just plain wrong. *See Harbourside Place, LLC v. Town of Jupiter*, 958 F.3d 1308, 1322 (11th Cir. 2020) (reasoning that case was "good opportunity . . . to practice judicial minimalism[] and decide no more than what is necessary to resolve" appeal); Christopher J. Peters, *Assessing the New Judicial Minimalism*, 100 Colum. L. Rev. 1454 (2000) (generally advocating judicial minimalism—*i.e.*, narrow rulings sufficient

---

[7] HIAS Pennsylvania, Professor Kara R. Finck, Professor Deeya Haldar, and Professor Sarah Katz filed a brief as *amici curiae* in support of Mother, as did the National Women's Advocacy Project, Inc.

[8] By the Majority's disposition here in favor of Mother, the lack of an opposing party also means that the Majority's questionable interpretation and application of federal law, now binding on our lower state courts, will not be challenged by way of a petition for writ of certiorari to the United States Supreme Court.

to resolve a case); Cass R. Sunstein, *The Supreme Court 1995 Term—Foreword: Leaving Things Undecided*, 110 Harv. L. Rev. 4 (1996) (same).

For that reason, and despite my misgivings, the prudent course of action is to resolve the matter before the court jurisdictionally and leave the question about the question for another day.  As stated above, I concur with the Majority's determination on the jurisdictional question.  I, therefore, return to the remaining aspect of the Majority's mandate, that being the remand to the Custody Court to enter orders concluding that the "Child[ren]'s reunification with Father is not viable under Pennsylvania law due to Father's abandonment and neglect" and "it is not in the Child[ren]'s best interest to be returned to Guatemala."  (Maj. Op. at 42.)

I agree with much of the Majority's recitation of the substantive law that a state court must apply when assessing a request for predicate SIJS judicial determinations.  (*Id.* at 34-37.)  Distilled, the Majority concludes that a Pennsylvania state court in this situation must apply Pennsylvania law.  That is what the Custody Court did in this case.  In refusing to issue the determinations Mother requested, the Custody Court considered the following Pennsylvania statutes on the reunification question:  (1) 23 Pa. C.S. § 6303(b.1) (definition of "child abuse"); (2) 23 Pa. C.S. § 6102(a) (definition of "abuse"); (3) 23 Pa. C.S. § 5402 (definition of "abandoned"); (4) 23 Pa. C.S. § 6303(a) (definition of "serious physical neglect"); and (5) 23 Pa. C.S. § 5329.1 (relating to child abuse and protective services in custody proceedings).  (Custody Court Op., 9/15/2022, at 12-14.)  It made certain factual findings with respect to the evidence and refused to make others.  Ultimately, applying Pennsylvania law, the Custody Court found that the record evidence did not support the requested reunification determination with respect to Children and Father.  (*Id.*)

As for the best interest inquiry, the Majority claims that the Custody Court held Mother to an improper legal standard when it observed: "[T]he record in this matter does not *definitively support* a conclusion that it is in the best interest of the children to issue a SIJ order." (Maj. Op. at 38 (second emphasis added) (quoting Custody Ct. Op., 09/15/2022, at 12).) I concede that the Custody Court's terminology in this single sentence of its opinion is imprecise at best, but the Majority does not consider the balance of the Custody Court's reasoning:

> There was no testimony given as to how the children performed academically in Guatemala; what their prospects of success would or could be had they remained in Guatemala or were to return to Guatemala; and the nature of their relationship with their Father or their Father's side of the family. The [c]ourt lacks unbiased testimony surrounding Father's financial status, and as such, is reluctant to come to the assertion that Father's alleged failure to contact the children is due to his lack of desire and not some other extenuating circumstances. In the absence of any credible evidence to the contrary, *the [c]ourt cannot conclude that it would not be in the best interest of the children to return to Guatemala.*

(Custody Ct. Op., 09/15/2022, at 12 (emphasis added).) The predicate state judicial determination relating to SIJS on best interests is not a question of custody. Rather, it asks whether "it *would not* be in the [child's] best interest to be returned to the [child's] or parent's previous country of nationality or country of last habitual residence." 8 U.S.C. 1101(a)(27)(J)(ii) (emphasis added). Clearly, the Custody Court did not feel it could make this predicate negative finding based only on the evidence of record. To me, this passage does not make it at all clear that the Custody Court "held Mother to an inapt burden of proof." (Maj. Op. at 38.) Instead, it reflects the Custody Court's concern about the utter absence of proof, regardless of the level of burden on Mother, upon which the Custody Court was willing to make the requested and statutorily authorized best interest determination.

The Majority claims that its own careful review of the record reveals Children are entitled to predicate SIJ determinations. (*Id*. at 39.) This, however, is not the proper appellate standard of review. Appellate courts do not look to the record to determine whether there is evidence to support the losing party's position; rather, they must look to the record to determine whether there is any support for the lower court's factual findings. *See Int. of K.N.L.,* 284 A.3d 121, 133 (Pa. 2022) (observing that appellate court is "compelled to perform a comprehensive review of the record for assurance the findings and credibility determinations [of the trial court] are competently supported"). The Majority simply does not engage in the proper inquiry and, instead, displaces the Custody Court's factual findings with that of its own.

In summary, I do not believe that the Majority has paved new ground here in terms of the law that a Pennsylvania state court must apply when assessing a request for predicate judicial determinations with respect to SIJS. I, therefore, do not agree with the portion of the mandate that returns this matter to the Custody Court for the entry of orders contrary to the determinations made by the Custody Court. Instead, although I agree with the Majority that the Superior Court erred in its jurisdictional determination, I would remand this matter to the Pennsylvania Superior Court to answer the question it "never reached;" namely, whether the Custody Court abused its discretion in refusing to grant the Mother her requested predicate SIJS determinations. (Maj. Op. at 38.) In doing so, the intermediate court may exercise its traditional role of error review and evaluate each of the asserted grounds of error Mother raised below.

Justice Mundy joins this dissenting opinion.