**[J-45-2024] [MO: Dougherty, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| LICELY JUAREZ VELASQUEZ, | : | No. 108 MAP 2023 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Superior Court at No. 2688 EDA |
| | : | 2022, entered on June 20, 2023, |
| v. | : | Affirming the Order of the Delaware |
| | : | County Court of Common Pleas, |
| | : | Civil Division, at No. CV-2021- |
| LIZARDO MARROQUIN MIRANDA, | : | 002235 dated September 15, 2022 |
| | : | and entered on September 20, 2022 |
| Appellee | : | |
| | : | SUBMITTED: March 25, 2024 |

**CONCURRING AND DISSENTING OPINION**

**JUSTICE WECHT**                                **DECIDED: August 29, 2024**

As I initially considered the Majority's disposition of this case, I perceived it to conflate concepts of child custody and juvenile dependency. In Pennsylvania law, these are distinct paradigms. The idea that parents can be "appointed" by the court to have custody of their own children struck me as strained and counterintuitive. However, after digging deeper, I find myself unable to avoid the peculiar, but nonetheless determinative, definition of "juvenile court" that federal law imposes upon us here. I also note that the weight of authority from other state courts suggests that the Majority's disposition is correct.

Federal law defines a "special immigrant," in relevant part, as:

**(J)** an immigrant who is present in the United States--
**(i)** who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the

immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;

**(ii)** for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and

**(iii)** in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status, except that--

> **(I)** no juvenile court has jurisdiction to determine the custody status or placement of an alien in the custody of the Secretary of Health and Human Services unless the Secretary of Health and Human Services specifically consents to such jurisdiction; and
>
> **(II)** no natural parent or prior adoptive parent of any alien provided special immigrant status under this subparagraph shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this chapter. . . .[1]

The federal regulations provide additional relevant information about special immigrant juvenile ("SIJ") status:

> (a) Definitions. As used in this section, the following definitions apply to a request for classification as a special immigrant juvenile.
>
> Judicial determination means a conclusion of law made by a juvenile court.
>
> Juvenile court means a court located in the United States that has jurisdiction under State law to make judicial determinations about the dependency and/or custody and care of juveniles.
>
>         *   *   *
>
> (b) Eligibility. A petitioner is eligible for classification as a special immigrant juvenile under section 203(b)(4) of the Act as described at section 101(a)(27)(J) of the Act, if they meet all of the following requirements:
>
> (1) Is under 21 years of age at the time of filing the petition;
>
> (2) Is unmarried at the time of filing and adjudication;
>
> (3) Is physically present in the United States;
>
> (4) Is the subject of a juvenile court order(s) that meets the requirements under paragraph (c) of this section; and
>
> (5) Obtains consent from the Secretary of Homeland Security to classification as a special immigrant juvenile. For USCIS to consent, the request for SIJ classification must be bona fide, which requires the petitioner to establish that a primary reason the required juvenile court determinations were sought was to obtain relief from parental

---

[1] 8 U.S.C. § 1101(a)(27)(J).

abuse, neglect, abandonment, or a similar basis under State law. USCIS may withhold consent if evidence materially conflicts with the eligibility requirements in paragraph (b) of this section such that the record reflects that the request for SIJ classification was not bona fide. USCIS approval of the petition constitutes the granting of consent.

(c) Juvenile court order(s).

(1) Court-ordered dependency or custody and parental reunification determination. The juvenile court must have made certain judicial determinations related to the petitioner's custody or dependency and determined that the petitioner cannot reunify with their parent(s) due to abuse, neglect, abandonment, or a similar basis under State law.

(i) The juvenile court must have made at least one of the following judicial determinations related to the petitioner's custodial placement or dependency in accordance with State law governing such determinations:

(A) Declared the petitioner dependent upon the juvenile court; or

(B) Legally committed to or placed the petitioner under the custody of an agency or department of a State, or an individual or entity appointed by a State or juvenile court.

(ii) The juvenile court must have made a judicial determination that parental reunification with one or both parents is not viable due to abuse, abandonment, neglect, or a similar basis under State law. The court is not required to terminate parental rights to determine that parental reunification is not viable.[2]

Given the statutory definition of a special immigrant juvenile as one "who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of . . . an individual or entity appointed by a State or juvenile court,"[3] application to custody cases seems dubious as an initial matter. Two pieces of this puzzle merit scrutiny. First, while the term "juvenile court" in Pennsylvania refers to a court dealing with dependency or delinquency matters,

---

[2]     8 C.F.R. § 204.11. According to the Federal Register, these regulations are promulgated by the United States Citizenship and Immigration Service ("USCIS"), an agency within the Department of Homeland Security. *See* 87 FR 13066-01 (2022).

[3]     8 U.S.C. § 1101(a)(27)(J)(i).

the federal provisions appear to sweep more broadly. Second, while the federal law uses the term "appointed" in reference to custody, Pennsylvania courts use the term "awarded" in the custody context. I address these two problems in turn.

As noted, in Pennsylvania, a "juvenile court" is one that handles dependency and delinquency cases. That being said, the applicable federal regulation expressly defines a "juvenile court" as one that has jurisdiction "to make judicial determinations about the dependency and/or custody and care of juveniles."[4] In Pennsylvania, such a definition of "juvenile court" would include a family division court that is making a custody determination. That is not how we generally refer to a family court. Nonetheless, in reviewing this federal statute and regulation, our courts are bound to respect the language and definitions that Congress and its agency delegees have chosen. The applicable federal regulation defines an acceptable juvenile court order for the SIJ application as one that makes "dependency or custody determinations," provided that the predicate findings are included.[5] This indicates that federal law contemplates custody as well as dependency as an appropriate avenue for pursuit of a SIJ predicate order, and that a Pennsylvania family court accordingly is a lawful venue for such a proceeding.

Other jurisdictions examining the issue have reached similar conclusions. For example, in a memorandum opinion, a Texas appellate court exploring jurisdiction stated: "In Texas, family district courts have jurisdiction over child welfare, custody, support, dependency[,] neglect, and delinquency, among other matters. Thus, family district courts are considered juvenile courts under the SIJ statute."[6]

---

[4]     8 C.F.R. § 204.11(a).

[5]     8 C.F.R. § 204.11(c) (cleaned up).

[6]     *In re B.A.L.*, No. 01-16-00136-CV, 2017 WL 3027660, at *3 (Tex. App. July 18, 2017) (unpublished) (internal citations omitted) (citing *In re J.L.E.O.*, No. 14–10–00628–CV, 2011 WL 664642, at *1 n.4 (Tex. App. Feb. 24, 2011) (unpublished) ("although Texas (continued…)

In reviewing the statute and regulation, a Maryland appellate court noted that "the exact makeup of these 'juvenile courts' varies from state to state," that "courts around the country hear SIJ evidence in a variety of settings, including custody proceedings, adoption petitions and probate issues," and that SIJ issues also have been "raised solely by motion, independent of any custody or guardianship proceeding."[7]  Examining its own judicial system, the Maryland court determined that, "an equity court has jurisdiction over 'custody or guardianship of a child.'  The circuit courts 'are the highest common-law and equity courts of record exercising original jurisdiction within the State.'  Therefore, the circuit courts would be considered juvenile courts under the broad federal definition and have jurisdiction to hear evidence relating to SIJ status."[8]  Since the circuit court was hearing a custody action, the appellate court held that the circuit court had jurisdiction as a juvenile court to make SIJ findings.

A Washington state court has ruled similarly, holding that "a superior court judge acting as a family court judge (*i.e.*, making determinations of a child's custody) -- or a superior court family law commissioner invested with such authority by the constitution, statute or delegation . . . doing the same -- is a 'juvenile court' judge for federal law purposes, authorized to [make SIJ status] findings."[9]

grants certain 'juvenile court[s]' 'exclusive jurisdiction over all proceedings involving delinquent conduct [by child] or conduct [by child] indicating a need for supervision,' definition of 'juvenile court' under SIJ statute 'broader . . . and includes the jurisdiction granted to Texas family district courts'" (quoting *In re J.L.E.O.*, 2011 WL 664642 at *1 n.4)).  The *B.A.L.* court ultimately concluded it did not have jurisdiction over the appeal because B.A.L. turned eighteen prior to the final order being signed, thereby depriving the juvenile court of jurisdiction.

[7]     *Simbaina v. Bunay*, 109 A.3d 191, 199 (Md. Ct. Spec. App. 2015).

[8]     *Id.* at 200 (footnotes and internal citations omitted).

[9]     *In re Custody of A.N.D.M.*, 527 P.3d 111, 119 (Wash. Ct. App. 2023).

Based upon the definition prescribed by the applicable federal regulation and the persuasive interpretations offered by other states' courts, I am satisfied that the trial court in this case was acting as a "juvenile court" for purposes of federal law, even if it was not a juvenile court as properly understood in Pennsylvania's judicial system.

As to the second issue, the use of the term "appointed" is ill-fitting in relation to an award of custody to a parent. We might (and sometimes do) speak of an agency or foster parent being appointed by a court to care for a child. We do not speak in this way when describing a parent's care and custody of the parent's child. This language appears to be largely unexamined by other states' courts. Most courts have focused upon the next phrase of the statute when determining whether SIJ findings are permitted in circumstances in which a parent is awarded custody: to wit, whether "reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law."[10] Even more common are scenarios in which state courts simply address an aspect of SIJ findings without questioning whether the parent's award of custody falls within the federal statute's ambit.[11]

Here, our Superior Court concluded that the children were not eligible for SIJ status because "[the c]hildren must be adjudicated dependent or under the custody of a state agency or individual or entity appointed by the state or juvenile court."[12] The court opined

---

[10]    8 U.S.C. § 1101(a)(27)(J)(i); *see J.U. v. J.C.P.C.*, 176 A.3d 136, 138–39 (D.C. 2018) ("A finding is sufficient for SIJ status if reunification with only one parent is not viable due to abuse, neglect, or abandonment. . . .").

[11]    *See*, *e.g.*, *Kitoko v. Salomao*, 215 A.3d 698, 702 (Vt. 2019) (holding that in a custody proceeding, "given the primacy of a child's best interests in cases like this and the court's broad discretion in determining those interests, the court does have the authority to make [SIJ] findings."); *Hernandez-Lemus v. Arias-Diaz*, 100 N.E.3d 321, 323 (Mass. 2018) (holding that the child was entitled to SIJ findings in the context of a custody case filed by the father).

[12]    *Velasquez v. Miranda*, 297 A.3d 837, 847 (Pa. Super. 2023).

that equating the mother's award of custody with the statutory requirement of custody in an individual appointed by a juvenile court is inconsistent with the purpose of the statute. The court identified the statute's purpose as "assist[ing] a limited group of abused children who are essentially 'ward[s] of the United States.'"[13] In reaching that conclusion, the Superior Court relied upon a lengthy quotation from the United States Court of Appeals for the Third Circuit, portions of which were focused upon language that is no longer part of the federal regulation.[14] The Superior Court distinguished its decision in *Orozco v. Tecu*, in which that court had determined that a trial court abused its discretion by failing to make requested findings concerning a SIJ determination implicated in the mother's custody hearing.[15] In *Orozco*, the trial court had refused to make SIJ findings, while the trial court here made findings that the children were not eligible.[16] This appears to be a distinction without a difference. If the Superior Court was correct that the award of custody to the mother in this case could not satisfy the federal statutory requirements, then it should have concluded that the *Orozco* panel was incorrect in finding that the trial court abused its discretion in refusing to make SIJ findings. If the Superior Court's reasoning here is correct, then the trial court in *Orozco* could not have made SIJ findings when the mother was awarded custody.

---

[13] *Id.* at 847 n.6.

[14] *Id.* at 845-46 (quoting *Osorio-Martinez v. Att'y Gen.*, 893 F.3d 153, 168-70 (3d. Cir. 2018)). *Osorio-Martinez* cited the version of the federal regulation that was in effect at the time. Notably, the regulation has since been amended to reflect the 2008 federal statutory amendments which "[e]xpanded eligibility to include children whom a juvenile court has placed under the custody of a person or entity appointed by a state or juvenile court." *Budhathoki v. Nielsen*, 898 F.3d 504, 508 (5th Cir. 2018) (quoting 6 USCIS, Policy Manual J.1 (2017)).

[15] 284 A.3d 474 (Pa. Super. 2022).

[16] 297 A.3d at 847.

The Superior Court here is not alone in ruling that an award of custody is not the same as an appointment by a juvenile court. In *Calel v. Calel*, the Ohio Court of Appeals concluded that a "trial court did not appoint the [mother] as the juvenile's custodian" in a custody case.[17] The court reasoned that, because a parent has a constitutionally protected right to custody of a child, "a parent's right to custody of their child arises from the operation of law, it does not originate with a court appointment."[18] The Ohio court offered no further discussion of the language of the federal statute or regulation.

The decisions by our intermediate court here and that of the Ohio court in *Calel* run counter to the greater weight of persuasive decisions of other states' courts. For example, a Minnesota court has examined the issue of whether children were "placed under the custody of . . . an individual . . . appointed by a [s]tate or juvenile court" when the mother was awarded custody of her children.[19] Because the relevant terms were not defined in the statute, the court turned to dictionary definitions, finding that:

> The verb "place" has a number of definitions, including "[t]o put in a specified relation or order," as when placing words into alphabetical order, or "[t]o put into a particular condition," as when someone is placed under arrest, or "[t]o appoint to a post," as when placing a person in a key position. *The American Heritage Dictionary of the English Language* 1382 ([3d] ed. 1992). Here, by granting appellant sole custody of the children, the district court created a specified relation and put the children into a particular position, under the care and custody of appellant. The children were therefore "placed" with appellant.
>
> In *Welfare of A.S.*, we examined the plain meaning of the term "custody," noting that it is defined by Black's Law Dictionary as "the care and control of a thing or person for inspection, preservation, or security." 882 N.W.2d [633,] 639 [(Minn Ct. App. 2016)] (quotation omitted). Here, the children

---

[17] 2024 WL 418789 at *2 (Ohio Ct. App. Feb. 2, 2024) (citing *Gonzalez v. Rodriguez*, 115 N.E.3d 718, 722 (Ohio Ct. App. 2018)).

[18] *Id.*

[19] *De Guardado v. Guardado Menjivar*, 901 N.W.2d 243, 247 (Minn. Ct. App. 2017).

were placed under the "custody" of appellant because she was made responsible for their care and control.

The noun "individual" is defined variously as simply "[a] person," "[a] single human being considered apart from a society or community," or "[a] human being regarded as a unique personality." *The American Heritage Dictionary of the English Language* 920 ([3d] ed. 1992). Appellant is an "individual" in this instance; she was granted *sole* custody.

Lastly, the verb "appoint" is defined, in relevant part, as "[t]o select or designate to fill an office or position" or "[t]o fix or set by authority or by mutual agreement." By fixing appellant's custodial rights by authority and designating her as sole custodian, the district court effectively "appointed" appellant.[20]

Based upon this plain language analysis, the Minnesota court determined that the award of custody to the mother qualified as an appointment under the SIJ statute. The court also provided an alternative analysis. To the extent that the statute was ambiguous, the court determined that both the legislative history of the SIJ statute and the relevant agency's interpretation of the statute supported the court's conclusion.[21]

Similarly, in Washington, the *A.N.D.M.* court held that it was "undisputed" that placing the child in the mother's custody satisfied the "placed under the custody of . . . an individual . . . appointed by . . . [a] juvenile court" portion of the SIJ statute.[22] In New York, a family court once refused to provide SIJ findings when the mother was awarded custody of the child.[23] New York's Appellate Division deemed this to be error. Although it focused upon the "reunification with 1 or both parents provision," the appellate court also held that "since the Family Court placed [the child] in the custody of her mother, she has been

---

[20]     *Id.* at 248 (footnotes and some internal citations omitted).

[21]     *Id.* at 249 (citing as evidence the 2008 amendments to the SIJ statute and the USCIS policy manual).

[22]     *In re Custody of A.N.D.M.*, 527 P.3d at 120.

[23]     *Marcelina M.-G. v. Israel S.*, 973 N.Y.S.2d 714, 718 (N.Y. App. Div. 2013).

'legally committed to, or placed under the custody of . . . an individual . . . appointed by a State or juvenile court located in the United States.'"[24] The Nevada Supreme Court has reached a similar conclusion, holding that "the district court's order granting [the mother's] petition for physical custody over [the child] constitutes a court determination that placed [the child] under [the mother's] custody. We conclude that an order determining physical custody of a child satisfies the dependency or custody prong for SIJ predicate findings."[25]

The term "appointed" is a poor word choice for describing an award of custody. But, considering the federal statute and regulation, and the above-discussed case law, I feel bound to give effect to what seems to be the intent of the federal law and its language. Outside of the SIJ context, I would incline to defy attempts to conflate juvenile courts with custody courts. But, within that specific context, I feel compelled to recognize and respect federal primacy in matters of immigration and citizenship.[26] Hence, I agree (uncomfortably) that, for purposes of this particular federal law, a court awarding custody is a "juvenile court" with the authority to issue a predicate order making SIJ findings, provided that the evidentiary record supports it. Hence, while I confess that I am not too sure that I am right,[27] I concur in the Majority's legal conclusions.

---

[24]    *Id.* at 721.

[25]    *Amaya v. Guerrero Rivera*, 444 P.3d 450, 452 (Nev. 2019) (internal citation omitted); *see id.* at 452 n.5 (citing *Simbaina*, *De Guardado*, and *Marcelina M.-G.* as examples of other state courts that reached the same conclusion).

[26]    *See generally*, U.S. Const. art. I, § 8, cl. 4 ("The Congress shall have Power . . . To establish an [*sic*] uniform Rule of Naturalization. . . .").

[27]    *See* Learned Hand, 'The "Spirit of Liberty" Speech' (delivered in 1944 on I AM an American Day), Bruun and Crosby, eds., Our Nation's Archives: The History of the United States in Documents (Black Dog & Levanthal 1999) ("The spirit of liberty is the spirit which is not too sure that it is right. . . ."). If we are indeed getting this wrong, Congress and the USCIS can — and should — make that clear.

However, I am intrigued by the Dissent's questions regarding the use of the term "reunification" in the statute, and the attendant implications for a one-parent custody award.[28] As noted above, several state courts have grappled with the "reunification with 1 or both of the immigrant's parents" language.[29] A question naturally arises as to whether a child can be "reunified" with a parent if the child was never out of the parent's custody. To my knowledge, these issues have not been squarely addressed in Pennsylvania's appellate courts.[30] And they do not appear to have been raised thus far in this case. It seems that, despite the Majority's thoughtful efforts today to clarify the law surrounding SIJ predicate orders, our work may not be done.

Ultimately, I depart from the mandate that the Majority chooses. Given the Majority's clarifications of the law, in my view, the best course of action is neither to compel entry of an order as the Majority directs nor to remand to the Superior Court as the Dissent suggests. Instead, I would remand to the trial court in the first instance. The trial court can review the record as it stands or supplement that record, either on its own accord or by request of the parties, if the court deems supplementation necessary in order to apply today's decision. Once the trial court makes its factual findings and applies the

---

[28]    *See* Diss. Op. at 5-6.

[29]    *See*, *e.g.*, *J.U.*, 176 A.3d 138-39 ("A finding is sufficient for SIJ status if reunification with only one parent is not viable due to abuse, neglect, or abandonment. . . ."); *Marcelina M.-G.*, 973 N.Y.S.2d at 722 ("We interpret the '1 or both' language to provide SIJS eligibility where reunification with just one parent is not viable as a result of abuse, neglect, abandonment, or a similar State law basis.").

[30]    While *Orozco* did not directly address the question that the Dissent raises, the Superior Court implicitly blessed the interpretation that custody with one parent could support SIJ findings. In that case, in which the mother was awarded custody of the child, the Superior Court held that the trial court abused its discretion in failing to issue an SIJ predicate order, and it remanded "for the trial court to enter a new order that shall include factual findings with respect to [the child] that are predicate to USCIS's SIJ determination under federal law." 284 A.3d at 479.

law as clarified and expounded upon in today's decision, that court can then issue the order it deems appropriate, subject, of course, to further appellate review.